**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT 2018 MAR -9  A 10: 47

U.S. DISTRICT COURT
NEW HAVEN, CT.

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) <br> OF THE UNITED STATES OF AMERICA ) <br> FOR A WARRANT AUTHORIZING THE ) <br> INSTALLATION AND MONITORING OF ) <br> A TRACKING DEVICE IN OR ON A Blue ) <br> HONDA ACCORD, FLORIDA LICENSE ) <br> PLATE NUMBER PD018N ) | 3:18MJ364-JCM |

### APPLICATION AND AFFIDAVIT FOR AUTHORIZATION TO INSTALL AND USE TRACKING DEVICE

Jason W. Bourdeau, a Postal Inspector with the United States Postal Inspection Service, being duly sworn, deposes and states:

Upon information and belief, a Honda Accord bearing Florida license plate number PD018N, unknown vehicle identification number ("the Subject Vehicle"), is presently being used in furtherance of 18 U.S.C. § 286 (conspiracy to file false claims), 18 U.S.C. § 1028 (identification information fraud), 18 U.S.C. § 1028A (aggravated identity theft), 18 U.S.C. § 641 (theft of government funds), and 18 U.S.C. § 1341 (mail fraud).

Your deponent further states that there is probable cause to believe that the installation of a tracking device in or on the Subject Vehicle, and use of the tracking device, will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

The source of your deponent's information and the grounds for his belief are as follows:

1

FILED
2018 MAR -9  A 10: 47
U.S. DISTRICT COURT
NEW HAVEN CT

1. I am a Postal Inspector with the United States Postal Inspection Service and have been so employed since September 2005. I attended and graduated with honors from Northeastern University, where I received a Master of Science in Criminal Justice, with a concentration in Investigations. After graduating, I was employed for approximately two years as a police officer in Danbury, Connecticut. In my ten years in law enforcement, I have conducted numerous investigations into illegal activity conducted through the United States Postal Service. I have investigated and arrested numerous suspects involved in schemes to obtain United States Treasury checks through the use of stolen identities. Additionally, I have obtained numerous search warrants related to these investigations and have employed the use of GPS tracking devices in numerous investigations.

2. Beginning in March 2013, a USPIS Cooperating Defendant (CD) began communicating with Ramon MEÑA (MEÑA) at the direction of law enforcement. The information that the CD has provided to date regarding MEÑA's criminal activities has proven to be accurate and reliable, and has been largely corroborated by several other sources of information.

3. Between March 2013 and the present, the CD and MEÑA have communicated numerous times through text message, phone calls and in-person. During the course of their communications, MEÑA and CD have discussed a scheme by which fraudulent tax returns are filed with the IRS and used to fraudulently obtain United States Treasury tax refund checks. In particular, MEÑA inquired if the CD knew anyone in the Postal Service who would be able to provide addresses to which fraudulent U.S. Treasury check tax refunds could be delivered. MEÑA explained that his associates would pay the postal employee for the addresses and for

2

obtaining the checks before they were delivered to the addresses. MEÑA also stated that he and his associates would pay the CD to cash fraudulently-obtained U.S. Treasury checks. MEÑA and the CD have also discussed credit card fraud and narcotics trafficking. Unless otherwise noted, all communications between MEÑA and the CD have been monitored and/or recorded.

4. On July 15 2013, MEÑA advised the CD that an associate of his (MEÑA's) would sell the CD a list of 50 identities with names, dates of birth and Social Security Numbers in exchange for $750. At the direction of law enforcement, the CD purchased the 50 identities with undercover funds and paid for the identifications by depositing the $750 purchase price into a Bank of America account believed to belong to one of MEÑA's co-conspirators.

5. On July 18, 2013, the Honorable United States Magistrate Joan G. Margolis authorized installation of a pen register and trap-and-trace device and disclosure of telecommunications and electronic communications records for the phone utilized by MEÑA ("MEÑA PHONE"). On August 16, 2013, Judge Margolis authorized continued use of pen-trap devices and disclosure of telecommunications and electronic communications records for the MEÑA PHONE. That order was amended on August 29, 2013 to correct an inadvertent typographical oversight, and was designated retroactive to August 16, 2013

6. On July 27, 2013, MEÑA, contacted the CD and advised the CD that two of his associates were going to bring United States Treasury checks from New York to Connecticut, and inquired if the CD would be interested in purchasing the checks. The CD replied that he did want to purchase the checks and agreed to meet MEÑA in Danbury, Connecticut that evening.

7. Later on the evening of July 27, law enforcement initiated surveillance in the vicinity of the designated meeting location. Shortly thereafter, investigators saw an unidentified

Hispanic male individual ("UM") walk through adjacent parking lots of the meet location conducting what appeared to be counter-surveillance. The UM, accompanied by MEÑA, then provided the CD with two Treasury checks that, respectively, had face values of $9,274 and $4,583. The CD paid the UM 55% of the value, or $7,650, to purchase of the checks. The UM[1] and MEÑA traveled to and from the meeting in a blue Honda Accord, bearing Florida registration PD018N.

8.   A review of Florida Department of Motor Vehicles records reveals that the subject vehicle is registered to DJ Auto Center, INC., 13450 SW 134 Ave #2, Miami, Florida.[2]

9.   On August 6, 2013, MEÑA arranged to meet the CD in Danbury, Connecticut, in order to sell the CD two additional Treasury checks. Prior to the meeting, MEÑA advised the CD that he was going to travel to New York to retrieve the checks and would then meet the CD in Danbury. Based upon GPS data available for the MEÑA PHONE, investigators determined that MEÑA traveled to the vicinity of Yonkers and the Bronx and then returned to meet with the CD in Danbury. Prior to the meeting, law enforcement initiated surveillance in the vicinity of the designated meeting location. Thereafter, investigators observed MEÑA arrive with the same

---

[1] Separately, law enforcement identified the UM as an individual who was withdrawing funds from a TD Bank account in July 2013 using the alias "Rafael Rodriguez-Reyes," which is currently believed to be a stolen identification. In 2012, this account received a deposit of a stolen Treasury funds and was used to purchase tax preparation software that has been linked to more than $1 million in fraud-induced tax returns.

[2] According to records of the Florida Department of Motor Vehicles (DMV), the subject vehicle's license plate was registered with Florida DMV at DJ Auto Center, INC in Miami, Florida. However, it has not been assigned to a specific vehicle. The Florida DMV believes that the license plate may have recently been placed on the subject vehicle and therefore has not yet been processed by Florida DMV.

UM in the Subject Vehicle. The UM once again provided the CD with two Treasury checks, the face value of which were, respectively, $9,322 and $5,744. Once again, the CD paid the UM 55% of the face value for the purchase of the checks. After selling the Treasury checks, the UM was observed conducting what appeared to be counter-surveillance in the area of the meeting location.

10. On September 4, 2013, MEÑA arranged to meet the CD in Waterbury, Connecticut, in order to sell the CD Treasury checks. Prior to the meeting, MEÑA advised the CD that he (MEÑA) would be obtaining the Treasury checks from the same individual that previously provided Treasury checks to the CD. Prior to the meeting, law enforcement initiated surveillance in the vicinity of the designated meeting location. Thereafter, investigators observed MEÑA arrive in the subject vehicle, operated by the UM. MEÑA exited the Subject Vehicle, entered the CD's vehicle and sold the CD three Treasury checks totaling $16,847. Once again, the CD paid MEÑA 55% of the face value for the purchase of the Treasury checks. After selling the Treasury checks, MEÑA was observed entering the passenger's side of the Subject Vehicle. The Subject Vehicle then left the meet location.

11. Later that evening, law enforcement located the Subject Vehicle parked in the driveway of 214 Lincoln Street, Waterbury, Connecticut.

12. Based on surveillance by law enforcement, the UM is using the Subject Vehicle in connection with trafficking in fraudulent United States Treasury tax refund checks, as he has arrived three meetings with the CD in the Subject Vehicle. Law enforcement also believes that the Subject Vehicle is being driven to New York to obtain the fraudulent Treasury checks in advance of each sale as MEÑA, who is believed to travel with the UM to New York

prior to meetings with the CD, has twice been located in areas of Yonkers and the Bronx through GPS coordinates of the MEÑA PHONE a few hours before the sales occur. Thus, tracking the movements of the Subject Vehicle will likely help law enforcement identify the place at which the UM and MEÑA are obtaining the checks and will help identify any co-conspirators who are providing checks to MEÑA and the UM.

13. Based upon my own observations, I know that the Subject Vehicle is presently within the District of Connecticut. In order to track the movement of the Subject Vehicle effectively and to decrease the chance of detection, I seek to place a tracking device in or on the subject vehicle while it is in the Waterbury, Connecticut area, located in the District of Connecticut. Because the UM sometimes parks the subject vehicle in his driveway and on other private property, it may be necessary to enter onto private property and/or move the subject vehicle in order to effect the installation, repair, replacement, and removal of the tracking device. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours. Particularly, because the UM has been observed conducting counter-surveillance prior to meetings with the CD, law enforcement safety and covertness are important.

7. In the event that the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 30 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

8. It is requested that the warrant and accompanying affidavit and application in support

6

thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against the flight of MEÑA and the UM, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the United States Postal Inspection Service (USPIS), Internal Revenue Service Criminal Investigations (IRS-CI), Drug Enforcement Administration (DEA), United States Secret Service (USSS), federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

9. In accordance with 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I request that the warrant delay notification of the execution of the warrant for a period not to exceed 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation, which is ongoing and likely to last at least another several months.

WHEREFORE, your deponent respectively requests that the Court issue a warrant authorizing members of USPIS, IRS, USSS and DEA or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on the subject vehicle within the District of Connecticut within 10 calendar days of the issuance of the requested warrant, and to remove said tracking device from the subject vehicle after the use of the tracking device has ended; to

surreptitiously enter the property located at 214 Lincoln Street, Waterbury, Connecticut, where the vehicle has been observed; to move the Subject Vehicle to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device, for a period of 30 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of Connecticut.

_____
Jason W. Bourdeau
United States Postal Inspector

Sworn to before me this
9th day of September, 2013

_____/s/_____
Hon. Joan G. Margolis
United States Magistrate Judge